IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **JACOB COBBS,** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| **v.** § | **Civil Action No. _____** |
| § | |
| **BAKER HUGHES** § | |
| § | |
| *Defendant.* § | |
| § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Jacob Cobbs (hereafter collectively referred to as "Plaintiff" or "Cobbs"), by counsel and brings this action for violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.,* for sexual assault, sexual harassment, harassment, hostile work environment, and retaliation, and complaining of Defendant Baker Hughes (hereafter referred to as "Defendant" or "Baker Hughes") and respectfully shows the Court as follows:

**I.**

**PARTIES**

1.01.   Jacob Cobbs is an individual, who is a citizen and resident of the State of Texas, who may be contacted through his undersigned counsel of record.

1.02.   Defendant Baker Hughes is a Foreign For-Profit Corporation with its principal place of business located at 1702 Aldine Westfield, Houston, Texas 77073. Plaintiff worked at its office at 2065 Market Street, Midland, Texas 79703. It can be served with process through the C.T. Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.

## JURISDICTION AND VENUE

2.01.   Jurisdiction is conferred on this Court by 28 U.S.C. § 1331. This Court has supplemental jurisdiction of Plaintiffs' state law claims.

2.02.   Venue for all causes of action stated herein lies in the Northern District of Texas because a substantial part of the events alleged in this Complaint took place within this District. *See* 28 U.S.C. § 1391(b).  Plaintiff's EEOC charge was filed in the Dallas District office of the EEOC.  Plaintiff received his Notices of Right to Sue and has timely filed his lawsuit.

## III.

## FACTUAL ALLEGATIONS

3.01.   Plaintiff began working for Baker Hughes in Midland, Texas on September 9, 2019 as Material Handler. Plaintiff's pay rate was $23.00 per hour.  Plaintiff's supervisor was Arturo Cazaras ("Arturo") and his manager was Michael Powell ("Powell").

3.02.   During Plaintiff's second week working at Defendant the problems started. Arturo would get in Plaintiff's face and scream at Plaintiff like a child.  Arturo threatened to fire Plaintiff daily.  Plaintiff couldn't walk away from this job at the time because he and his wife just had a new baby and had moved 1,200 miles away from home.

3.03.   Plaintiff's manager, Powell, would horse play with everyone at the shop.  Powell would hit guys in the groin, grab their rear ends, grab their groin area and talk very sexually.

3.04.   On or about October 5, 2019 Plaintiff walked into work to start his shift.  Powell was standing by the door along with Arturo.  Plaintiff said, "good morning" and they both replied, "good morning."  As Plaintiff walked by Powell, Powell reached out and hit Plaintiff in the groin. Powell and Arturo both laughed.

3.05. On or about November 1, 2019 Plaintiff was in the doghouse in the yard doing paperwork. Powell walked in and asked why Plaintiff was just sitting down on the clock. Plaintiff told him that he was finishing up paperwork. Powell told Plaintiff that once Plaintiff was done with the paperwork to meet him outside because he has something to show Plaintiff. Plaintiff told Powell he would be right there.

3.06. As Plaintiff was exiting the doghouse, Powell was standing off to the side of the door and hit Plaintiff in the groin. Plaintiff told him to stop but Powell just laughed and told Plaintiff to have a good day.

3.07. On or about November 6, 2019 Plaintiff informed his shop lead, Javier Agurrie ("Javier") what had been going on with Powell and Arturo. Plaintiff told him that Arturo would get in Plaintiff's face and threaten Plaintiff's job daily and that Powell had hit Plaintiff in the groin twice so far. Javier told Plaintiff to just keep his head down, that it was like being in high school again because the supervisors and managers all drank and partied together after hours so if one doesn't like you, none of them will like you. Javier said Plaintiff would lose his job if he reported them.

3.08 On or about January 1, 2020 Plaintiff was placed on second shift. Plaintiff worked from 3:00 p.m. to whenever the last job was sent from the yard. They had a 3:30 p.m. production meeting to go over the jobs for the night. Around 4:30 p.m. they walked out of the meeting and Powell was in the hallway with an engineer as Plaintiff walked by him. This time Powell hit Plaintiff in the groin with his fist. Plaintiff fell to the floor due to Powell hitting him so hard. Everyone that was in the production meeting saw what happened. Some were laughing and some made comments about how this was not right and they couldn't believe Powell just did that to Plaintiff.

3.09   On or about May 20, 2020 Plaintiff had attempted to report Powell's abuse and multiple assaults to the local HR Representative Katelyn Wood.  However, she was working remotely and was not accepting phone calls or emails.

3.10.   On or about June 15, 2020 Plaintiff's supervisor Arturo walked past Plaintiff and rammed his shoulder into Plaintiff.  Plaintiff stopped and asked Arturo why he did that.  Arturo responded that it was just a friendly good morning.  Plaintiff told him that's not how management should behave.  Arturo laughed and told Plaintiff to "fucking quit."

3.11   On or about March 18, 2021 Plaintiff put in a transfer from Midland, Texas shop to the Tulsa, Oklahoma shop due to the hostile work environment in Midland.  This transfer had to be approved by Plaintiff's manager, supervisor and the hiring manager.  Powell told Plaintiff he would approve it but he would have to talk to Arturo about it.

3.12   After the 4:00 p.m. meeting Plaintiff asked Arturo if they could talk.  Arturo agreed. Plaintiff told Arturo that he needed a transfer because he couldn't deal with the way he was continually being harassed.  Arturo became extremely aggressive and began yelling at Plaintiff to just go home.  Plaintiff told Arturo that he was just trying to do the right thing.  Arturo told Plaintiff to "get the fuck out."  Plaintiff turned to leave then Arturo stepped in front of Plaintiff and began chest bumping Plaintiff.  Plaintiff stepped around Arturo, went directly to the doghouse and wrote an email to Baker Hughes' Corporate HR on his work email informing them of everything that had happened.  After sending the email Plaintiff went to Powell and informed him as well.  Powell told Plaintiff that he thought it would be best if Plaintiff left, so Plaintiff handed him his phone and badge.

3.13.   About a week after Plaintiff was terminated from Baker Hughes, Plaintiff was contacted by a corporate HR Representative Valecia.  She told Plaintiff that they were opening a

full investigation on the Midland shop and if they needed any more information they would be in contact.

3.14.   A few weeks later, Valecia reached out to Plaintiff and informed him that the investigation was complete and that they really appreciated Plaintiff's reporting all this to them. Valecia said they had no idea of all the things going on at the Midland, Texas shop.

3.15    Plaintiff was informed by multiple co-workers that Powell had been fired.

3.16    Plaintiff's treatment at Baker Hughes caused Plaintiff to have to move his wife and 3 kids from Texas to Arkansas to live with his mother because he lost their house due to being terminated by Defendant.  Powell's and Arturo's treatment of Plaintiff was so severe that Plaintiff has suffered from PTSD to the point that if anyone approaches Plaintiff he becomes nervous with anxiety scared he's going to be assaulted.

## IV.

## FIRST COUNT

## NEGLIGENT RETENTION

4.01    The foregoing paragraphs of this Petition are incorporated in this Count by reference as fully as if set forth at length herein.

4.02    Defendant Baker Hughes had ample notice of the propensity of Powell to assault, mistreat, and harass employees from conduct of Powell while working as Manager at the Midland, Texas location. Defendant was under a duty to inquire as to the competence of managers whom Defendant retained in its employment. Nevertheless, Defendant retained Powell and Arturo in its employ knowing their propensity toward violence and was therefore directly negligent toward Plaintiff and liable for the damages which were proximately caused by Powell's and Arturo's assault of Plaintiff, and infliction of emotional distress upon Plaintiff. Plaintiff's damages include

past and future lost earnings, past and future damages to earnings capacity, past and future mental anguish and emotional distress, and other actual damages in excess of the minimum jurisdictional limit of this Court.

4.03   The conduct of Defendant in retaining Powell and Arturo in its employment was grossly and wantonly negligent, in that it subjected Plaintiff to an extreme risk of injury. Defendant was consciously indifferent to the extreme peril that the retention of Powell and Arturo in its employment created, in that Defendant knew from prior incidents involving Powell and Arturo that their conduct constituted an extreme risk of peril to employees under their supervision, but continued in that course of conduct because it was indifferent to the peril to others that was created. Plaintiff is therefore entitled to recover exemplary damages. Accordingly, Plaintiff sues for exemplary damages in a sum in excess of the minimum jurisdictional limit of this Court.

4.04   Such acts and conduct were committed with malice, in that Powell and Arturo, Managers of Midland location, acting in the course and scope of their employment, specifically intended to cause substantial injury to Plaintiff or, in the alternative, committed acts or omissions which, when viewed objectively from Powell's and Arturo's standpoint at the time of occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which they had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Defendant authorized the doing and the manner of the acts by Powell and Arturo or Powell and Arturo were unfit and Defendant was reckless in employing them, or Powell and Arturo were employed in a Vice Principal capacity and were acting in the scope of employment, or Defendant, or a manager of Defendant ratified or approved the acts. Therefore, Defendant is liable to Plaintiff

for exemplary damages. Plaintiff therefore seeks exemplary damages in an amount in excess of the minimum jurisdictional limit of this Court.

# V.

## SECOND COUNT

## ASSAULT

5.01 The foregoing paragraphs of this Petition are incorporated in this Count by reference as if set forth at length herein.

5.02 Plaintiff was the victim of sexual assault and battery suffered at the hands of a Vice Principal in the person of Manager Powell acting in the course and scope of his employment at Defendant. Defendant was negligent in its hiring and/or retention of Powell after knowing of his violent and abusive tendencies. Such a retention constitutes authorization or ratification of Powell's acts. Defendant knew that Powell was unfit and Defendant acted with malice in retaining Powell.

5.03 Defendant knowingly or negligently caused Plaintiff to be put in a position where he was at great risk of the assault by Powell.

5.04 As a result of these actions, Plaintiff has endured shame, embarrassment, humiliation and mental, emotional and physical pain and anguish. Plaintiff therefore seeks actual damages in an amount in excess of the minimum jurisdictional limit of this Court.

5.05 The acts of sexual assault committed upon Plaintiff were intentional and willful, and exposure of Plaintiff to such acts and the ratifications by Defendant of such acts were done with conscious indifference to the rights and welfare of Plaintiff. Plaintiff is therefore entitled to recover exemplary damages. Accordingly, Plaintiff sues Defendant for exemplary damages in a sum in excess of the minimum jurisdictional limit of this Court.

5.06 Such acts and conduct were committed with malice, in that Powell, acting in the course and scope of his employment, specifically intended to cause substantial injury to Plaintiff or, in the alternative, committed acts or omissions which, when viewed objectively from his standpoint at the time of occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which he had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Defendant authorized the doing and the manner of the acts by Powell, or Powell was unfit and Defendant was reckless in employing him, or Powell was acting in the scope of employment, or Defendant, or a manager of Defendant ratified or approved the acts. Therefore, Defendant is liable to Plaintiff for exemplary damages. Plaintiff therefore seeks exemplary damages in an amount in excess of the minimum jurisdictional limit of this Court.

## VI.

## THIRD, FOURTH AND FIFTH COUNTS

## RETALIATION, HARASSMENT AND HOSTILE ENVIRONMENT

6.01. The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

6.02. Plaintiff filed charges of retaliation, harassment and hostile environment with the EEOC. Plaintiffs filed this Complaint within 90 days of their receipt of the Notices of Right to Sue from the EEOC. The EEOC Notice of Right to Sue is attached as **Exhibit A** hereto.

6.03. Defendant is an employer within the meaning of Title VII. 42 U.S.C. §2000e(b). Defendant employs more than fifteen (15) employees within the current calendar year.

6.04. Defendant has violated Title VII, as amended, by retaliating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because Plaintiff engaged in protected activity, including reporting violations of Title VII.

6.05. Defendant has retaliated against Plaintiff by subjecting him to retaliatory acts due to his report of sexual assault, retaliation, harassment and hostile environment so that Plaintiff was terminated. Defendant has thereby intentionally engaged in unlawful employment practices prohibited by Title VII.

6.06   The conduct engaged in by Defendant toward Plaintiff with discrimination, retaliation and harassment as motivating factors, created a hostile environment in which Plaintiff had to work.

6.06.   Such discrimination by Defendant against Plaintiffs was intentional. Accordingly, Plaintiffs are entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Further, this retaliation was done with malice or with reckless indifference to Plaintiffs' federally protected rights. Plaintiff is therefore also entitled to recover punitive damages.

6.07.   Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs.

## VII.

## Jury Demand

7.01.   Plaintiffs demand trial by jury of all claims alleged herein to which they are entitled.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendant be cited to appear and answer herein, and that on final trial, Plaintiffs have and recover the following relief against Defendant:

1. Judgment for back pay and front pay and all past and future lost fringe benefits;

2. Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

3. Compensatory damages for the humiliation, damage to reputation, mental and emotional distress, and pain and suffering Plaintiff has experienced and endured as a result of the discriminatory actions of Defendant;

4. The costs and expenses incurred by Plaintiff in seeking new employment;

5. Damages for past and future mental anguish and emotional distress, inconvenience, loss of enjoyment of life, and damages to reputation;

6. Liquidated damages to the fullest extent allowed by law;

7. Economic and reliance damages;

8. Prejudgment and post judgment interest at the maximum legal rate;

10. Exemplary damages;

11. Attorneys' fees;

12. Expert's fees;

13. All costs of court; and

14. Such other and further relief to which Plaintiff may be justly entitled.

Dated: this 11th day of April, 2022.

                                             Respectfully submitted,

                                             **KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*
                                             **W. D. MASTERSON**
                                             State Bar No. 13184000
                                             3109 Carlisle Street
                                             Dallas, Texas 75204
                                             214-969-9099 - Telephone
                                             214-953-0133 – Facsimile
                                             wdm@kilgorelaw.com

                                             **ATTORNEY FOR PLAINTIFF**
                                             **JACOB COBBS**